UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | Case No. 22-30032 |
| MICHAEL TIMMS, ) | |
| Defendant. ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

The United States of America by Gregory K. Harris, United States Attorney for the Central District of Illinois, and Assistant United States Attorney Sarah E. Seberger, hereby respectfully responds in opposition to the defendant's motion to suppress evidence.

### Procedural History

1. On May 31, 2022, the defendant was arrested by the Springfield Police Department following a traffic stop of the vehicle the defendant was driving.

2. On July 6, 2022, the defendant was indicted by a grand jury in the Central District of Illinois for the offenses of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g); possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D); and

1

possession of a firearm during and in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).

3. On August 23, 2022, the defendant was arrested in the Middle District of Tennessee. A Rule 5 hearing and detention hearing were subsequently held in Tennessee and the defendant was released and ordered to appear in the Central District of Illinois.

4. On October 13, 2022, the defendant appeared in this District for arraignment. At that time, the defendant pled not guilty to all charges and was released on his own recognizance, with conditions.

5. On May 22, 2023, the defendant filed a motion to suppress evidence claiming that the Springfield Police Department conducted an illegal stop of his vehicle and, therefore, all evidence and statements should be suppressed. (R. 20). In the alternative, defendant argued every word he uttered to Springfield Police Department officers on May 31, 2022, should be suppressed for failure to comply with Miranda v. Arizona, 384 U.S. 436.

6. On May 23, 2023, the Court directed the government to file a response to the motion to suppress.

## Factual Background

7. On May 31, 2022, Officers Colton Redding and Lamar Moore of the Springfield Police Department Street Crimes Unit (SCU) were on patrol in the City

of Springfield, Illinois. Both officers noticed a white Infinity SUV fail to use its turn signal before making a left turn into a gas station. Officer Redding also observed the white SUV to have darker window tint than allowed under Illinois law. The officers conducted a traffic stop of the vehicle in the parking lot of the Circle K gas station located at North 19th Street and East North Grand Avenue in Springfield.

Defendant exited the driver's seat and was out of the car before officers finished their approach. Officer Redding exited his car and approached the defendant. Officer Redding immediately identified the two reasons for the stop – the SUV's window tint and failure to signal.  The driver's door was open and Officer Redding could see improperly packaged marijuana inside the vehicle. Officer Redding had the passenger, the defendant's father, Michael S. Timms, exit the vehicle and began searching the SUV. Meanwhile, the defendant stood with Officer Moore.

Inside the SUV, Officer Redding recovered a Taurus G3 pistol, two plastic bags containing approximately 536 grams of suspected marijuana, a digital scale, an additional three plastic bags of suspected marijuana located inside the vehicle's interior (driver's door handle pocket, driver's door pocket, inside a shoe), cocaine, unused plastic zipper bags found in center console, yellow pills suspected to be Vidalista pills, black and purple pills suspected to be Viagra pills, and a rail-mounted laser/light firearm attachment. After locating the firearm, Officer

Redding handcuffed the defendant. As the defendant was handcuffed, there was a colloquy between Officer Moore and the defendant. This interaction is captured on Officer Moore's body worn camera,[1] which was submitted to the Court as Defendant's Exhibit B. The government would draw the Court's attention to the exchange which occurs at minute markers 05:18 to 6:12. The following is a transcript[2] of what occurs as Officer Redding places handcuffs on the defendant:

> REDDING: Whenever we see the weed, it's, like, we have to address it.
>
> TIMMS: What's going on? What's going on? What's the problem?
>
> [Defendant handcuffed by Officer Redding]
>
> MOORE: I, I don't know, bro.
>
> REDDING: Got that blicky, brother.
>
> TIMMS: (Sighs)
>
> MOORE: You got a blicky[3] in there, bro?
>
> (Officer Moore radios to dispatch)
>
> TIMMS: Dad, get my keys.
>
> MOORE: Step back here, bro.
>
> TIMMS: Come on, bro. I'm from out of town.

---

[1] Officer Redding's statement as he handcuffed the defendant is best captured on his body camera video recording (Defendant's Exhibit A) starting at 5:30 into the video.
[2] The evidence is the Defendant's Exhibit B, not the government's transcript. The government merely offers its transcript to aid the Court. See Fed. Crim. Jury Instr. 7th Cir. 3.14 (2022 ed.)
[3] "Blicky" is a slang term for a firearm.

MOORE: So, tell me, okay. Hold on.

TIMMS: I'm from out of town, bro, please.

MOORE: Sit down, sit down right here. Sit. Tell, what's going on?

[Defendant is directed to sit on the side floorboard of Officer Moore's squad car, the squad car door is open]

TIMMS: I'm from out of town, bro. Please, man.

MOORE: What is, I don't know what's going on.

TIMMS: I mean, I don't neither (unintelligible).

MOORE: I didn't search your car, I don't know what's up (background noises), you know what I mean?

TIMMS: (Unintelligible) gun in the back.

MOORE: What?

TIMMS: I got a gun in the back.

After additional time passes, the defendant was ultimately directed to move from his perch on the side of the passenger area with the door open to sit fully in the front passenger seat of Officer Moore's squad car with the door closed, and Officer Moore began preparing the arrest paperwork. Officer Moore asked the defendant questions to complete the required booking process and to confirm the defendant's identity. During that process, Sergeant Tyler Lynn of the Springfield Police Department arrived, started reading the defendant his Miranda rights and was stopped by a phone call and discussion with Officer Redding. Ultimately, the

5

defendant was transported to the Springfield Police Department by Officer Moore, placed in an interview room, read Miranda and then the defendant agreed to be interviewed by Officer Moore and Sergeant Lynn.

## Legal Standard

The Seventh Circuit has held that a decision to stop a vehicle is reasonable "when the police have probable cause to believe a traffic violation occurred" – even a "minor traffic offense." United States v. Muriel, 418 F.3d 720, 724 (7th Cir. 2005) (citing Whren v. United States, 517 U.S. 806, 810, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996)). A court need only inquire whether "the officer had probable cause to believe that a traffic violation occurred . . . not whether" the defendant had actually committed the violation. Id. (citing Whren, 517 U.S. at 819). Thus, "[a] stop and search can be reasonable even if the defendant did not actually commit an offense as long as the officer reasonably believed an offense occurred." United States v. McDonald, 453 F.3d 958, 960 (7th Cir. 2006). Probable cause for an arrest is objective, not subjective. Ramos v. City of Chicago, 716 F.3d 1013, 1018 (7th Cir. 2013).

Miranda applies when a person is subject to custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). For purposes of Miranda, "custody" does not begin during a traffic stop until formal arrest, even if the driver's freedom had been restrained earlier in the process.

Berkemer v. McCarty, 468 U.S. 420, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984). Determining when custody has commenced is a totality of the circumstances, fact-based analysis. United States v. Schlatter, 411 F. App'x 896, 899–900 (7th Cir. 2011). Interrogation includes "any words or actions on the part of the police (other than those normally attendant to arrest or custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). If the officer's questions were not "reasonably likely to elicit an incriminating response," no interrogation occurred. United States v. Westbrook, 125 F.3d 996, 1002 (7th Cir. 1997).

Miranda does not apply to responsive police questioning intended to clarify a voluntary declaration, because such exchanges are not the sort of coercive interrogations that Miranda seeks to prevent. See Andersen v. Thieret, 903 F.2d 526, 532 (7th Cir. 1990). Further, volunteered statements are not subject to Miranda warnings. Id.; Innis, 446 U.S. at 299-300.

The Seventh Circuit has held that questions such as "what is your name?" and "where do you live?" will not usually constitute interrogation within the meaning of Miranda because it cannot be said that police, when asking these questions, should know that the questions are likely to evoke an incriminating response. United States v. Edwards, 885 F.2d 377, 385 (7th Cir. 1989) (citing Innis,

7

446 U.S. at 301). In so holding, the Seventh Circuit noted that, in non-arrest situations, police routinely ask people for their names and addresses where it is clear that Miranda warnings are not required, although such inquiries might, in fact, confirm a police officer's suspicions sufficiently to give rise to probable cause to arrest. Id. Similarly, in an arrest situation, during booking, identification questions will eventually be asked and the prevailing view is that such inquiries are lawful, even absent Miranda warning. Id.; See also, Pennsylvania v. Muniz, 496 U.S. 582, 601, 110 S. Ct. 2638, 110 L. Ed. 2d 528 (1990) (questions to secure biographical data necessary to complete the booking process are exempt from Miranda coverage).

**Argument**

The traffic stop of the defendant was supported by probable cause and legally valid. Therefore, defendant's arguments that all statements and evidence obtained as a result of the stop must be suppressed are without merit. Defendant raises a second basis to suppress statements – violation of Miranda. For the reasons that follow, the government concedes that some statements were custodial and obtained in violation of Miranda but other statements were either non-custodial or not the product of Miranda.

The motion filed by the defendant is supported by five exhibits. Officers Moore and Redding are consistent throughout the defendant's exhibits that the

defendant failed to use a turn signal when he turned into the gas station. Nowhere in those exhibits does the defendant offer any factual support for his claim that he in fact used his turn signal such that the stop would be illegal. It is the defendant's burden to make a prima facie showing of illegality in filing a motion to suppress evidence. United States v. Rollins, 862 F.2d 1282, 1291 (7th Cir.1988), cert. denied, 490 U.S. 1074, 109 S.Ct. 2084, 104 L.Ed.2d 648 (1989). Here, as to the defendant's first issue, all the defendant offers is "speculation" that Officer Redding isn't telling the truth about witnessing a traffic violation. United States v. McGaughy, 485 F.3d 965, 970 (7th Cir. 2007). He offers nothing "definite, specific, and non-conjectural" enough to contest Officers Redding and Moore's observations that the defendant failed to use his turn signal. Id. "Reliance on vague, conclusory allegations is insufficient." United States v. Randle, 966 F.2d 1209, 1212 (7th Cir. 1992). The government is not specifically arguing that this Court shouldn't hold an evidentiary hearing, nor that existence of a traffic violation is a material issue. However, the law requires motions to suppress to be supported by more than mere speculation and personal opinion. The defendant's baseless personal attacks

on Officer Redding[4] and the Springfield Police Department[5] fail to meet that standard.

I.      The Traffic Stop

The failure of the defendant to use his turn signal properly before turning provides a valid basis for the traffic stop. Drivers in Illinois are required to activate their turn signal no less than 100 feet before turning, whether at an intersection or turning into a private driveway. 625 Ill. Comp. Stat. Ann. 5/11-804. Defendant was observed by two officers making a turn without signaling appropriately. During the traffic stop, the defendant asked Officer Redding at the 00:43 to 00:49

---

[4] The Seventh Circuit did not make any finding in Banks impugning the credibility of Officer Redding as the defendant would lead you to believe. Officer Redding got the law wrong; he was not found to be untruthful. That does not somehow make an officer "dishonest." Defendant makes the ridiculous claim that Officer Redding will do or say anything to make an arrest. That is pure hyperbole and wildly inaccurate.  Further, while the government acknowledges the Seventh Circuits' opinion in Banks and their rejection of the government's Davis argument, in light of the dispersions being cast about Officer Redding the government would note that at the time of the arrest in Banks, several district courts had issued opinions supporting Terry stops on porches. See. e.g., United States v. Pouncey, No. 19 CR 579, 2020 WL 1027884, at *3 (N.D. Ill. Mar. 3, 2020) (under Richmond, "officers may conduct a Terry stop within a home's curtilage"); United States v. Luckey, 515 F.Supp. 3d 870, 877 (N.D. Ill. 2021) (under Richmond, "the Fourth Amendment allows justified Terry stops to occur in the curtilage of an" individual's home); Gut v. City of Wausau, No. 20-CV-1111-JDP, 2022 WL 843852, at *5 (W.D. Wis. Mar. 22, 2022) (under Richmond, "seizure on a porch can be justified without a warrant and on less than probable cause").

[5] Defendant makes several outlandish claims for which he cites no authority, which are unsupported by the law and should be ignored. Defendant's belief that a command level decision by the Springfield Police Department and the Springfield City Council to outfit their officers with body worn cameras  but not squad car video somehow warrants suppression of evidence in cases involving the Springfield Police Department is personal opinion and not a legal concept. Likewise, counsel's extrapolation of criminal behavior in Memphis, Tennessee to Officers Redding and Moore is a mindboggling stretch and again, such extrapolations have no basis in the law.

minute markers on Officer Moore's body camera video, "you pulling me over for my turn signal?" to which Officer Redding responded, "yeah, your turn signal". Later, the defendant asked Officer Moore at minute markers 01:45 to 01:40, "[y]a'll get me for my turn signal?" to which Officer Moore stated "[y]eah, that's still a turn, a traffic stop", and the defendant responded, "I feel ya', I feel ya'." See Defendant's Exhibit B – Officer Moore's body worn camera.  (Note: the defendant argues repeatedly with officers about his window tint but does not contest the turn signal violation at all.)

Because officers stopped the defendant for an offense which was supported by probable cause, the subsequent stop of the defendant and resulting search is lawful. See United States v. Moore, 375 F.3d 580, 583 (7th Cir. 2004) (violation of 625 ILCS 5/11-804 gave officer probable cause to stop offending vehicle); See also, United States v. Smith, 80 F.3d 215, 219 (7th Cir. 1996) (probable cause existed for traffic stop where vehicle was straddling lanes and failed to use turn signal). As the Seventh Circuit has repeatedly held, the relevant inquiry is not whether the defendant could be convicted of the offense, but rather whether the officer had probable cause to believe a traffic law had been violated. See United States vs. Muriel, 418 F.3d at 724; United States v. Cashman, 216 F.3d 582, 587 (7th Cir. 2000); United States v. Dexter, 165 F.3d 1120, 1124 (7th Cir. 1999); United States v. Smith, 80 F.3d 215, 219 (7th Cir. 1996).

The government agrees that if the officers stopped the vehicle for tinted windows *only*, there might be an issue as the Illinois Vehicle Code doesn't require vehicles titled out of state to comply with Illinois law on window tint.[6] Even that however, would not justify suppression because Officer Redding's mistake of law regarding the window tint is arguably an objectively reasonable mistake of law that could justify a traffic stop based on reasonable suspicion under the Fourth Amendment. Heien v. North Carolina, 574 U.S. 54, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014). The Court, however, does not need to address the window tint issue because there was another basis for the traffic stop which was identified by both officers – the failure to use a turn signal. The Seventh Circuit has "repeatedly held that the offense for which probable cause exists need not be the subjective offense for which the officer was conducting the arrest." United States v. Ramos, 716 F.3d at 1018–19.

Defendant claims this was a pretextual stop – it wasn't -  this claim has no merit under the law or under the evidence submitted to the Court by the defendant. It  does not matter if the stop was pretextual if there is probable cause for the stop. See Whren, 517 U.S. at 812–13, 818. A police officer's ulterior motive will not invalidate a traffic stop, no matter how minor the traffic violation that

---

[6] 625 Ill. Comp. Stat. Ann. 5/12-503 Subsections (a), (a-5), (b), and (b-5) of this Section shall not apply to: (2) those motor vehicles properly registered in another jurisdiction.

afforded the officer a rationale to make that stop. United States v. Bass, 325 F. 3d 847, 850 (7th Cir. 2003).

II.   Defendant's Statements

Defendant argues that all of his statements must be suppressed because he was in custody from the moment he was approached by officers. Under Miranda, "the government may not use statements stemming from the custodial interrogation of a defendant unless the government has utilized procedural safeguards effective to secure the privilege against self-incrimination." United States v. Ambrose, 668 F.3d 943, 2012 WL 506741 (7th Cir. Feb. 16, 2012). However, not every conversation with the government "imperils" the privilege, such that Miranda warnings must be given. Id. Because Miranda is concerned with the inherently coercive nature of custodial interrogation, a suspect "must be both in custody and subjected to interrogation before Miranda warnings are required." Id.

First, it is well established persons detained pursuant to traffic stops, like those who are stopped under Terry, are not in custody for Miranda purposes. Berkemer v. McCarty, 468 U.S. 420, 439-40 (1984); See also United States v. Wyatt, 179 F.3d 532, 536 (7th Cir. 1999). Requesting a person exit a car does not place them in custody for Miranda. Officers frequently ask citizens to exit their vehicle during traffic stops for officer safety reasons. Indeed, the United States Supreme Court has determined that such a request is lawful and is not a serious intrusion

13

upon the sanctity of a person--in fact, it "hardly rises to the level of a petty indignity." See Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977). Placing a person unhandcuffed in a squad car may not even be a situation where a defendant is in custody for purposes of Miranda. See United States v. Murray, 89 F. 3d 459, 462 (7th Cir. 1996) ("... the fact that Murray was questioned while seated in the back of the squad car did not put him 'in custody' for purposes of Miranda warnings."). It follows that being directed to stand away from a car being searched likewise, does not put a person in custody for purposes of Miranda. Moreover, defendant was directed to stand away from his car because he kept moving back towards the car. See Defendant's Exhibit B. Officer Moore had to repeatedly cajole the defendant to move away from his vehicle as Officer Redding searched it. The reasonable, permissible basis for asking the defendant to move away from the car was for officer safety, it did not render the defendant in custody for purposes of Miranda.

In Murray, defendant was pulled over for a traffic offense, after not producing a driver's license, he was asked to get out of the car. Murray at 461. Officers then located malt liquor and baggies, which appeared to contain crack-cocaine. Id. At that point, defendant became combative and was placed in the squad car. Id. Officer's then searched Murray's car and located a firearm. They then returned to Murray and asked him if he knew who owned the gun. Id.

14

The Seventh Circuit concluded defendant had not been "in custody" because the questioning took place on a lighted street in an urban area in public view; only a brief time elapsed between the initial stop and the questions; and there was "no evidence the police officers engaged in conduct which would have overborne Murray's will." Murray at 462. The Seventh Circuit also noted the subjective intent of the officers to arrest Murray was irrelevant, since the officers had not yet informed Murray he was under arrest. Id. When reviewing the traffic stop of the defendant and applying the applicable law, it is clear that the defendant was not in custody for purposes of Miranda until after he was handcuffed, directed to sit inside Officer Moore's squad car on the passenger seat and the car door was shut.

Second, it is well established that a police officer's response to a defendant's question is not interrogation. The colloquy between Officer Moore and the defendant after Officer Redding handcuffed the defendant, is not an interrogation but rather Officer Moore's response to questions by the defendant. In particular, the statement by the defendant, "I got a gun in the back" was not made as part of an interrogation. In United States v. Briggs, 273 F.3d 737 (7th Cir. 2001), police responded to the defendant's question about what would happen to his co-arrestee by saying both of them would be charged with drug possession. In response, the defendant made incriminating statements. The court found no

15

Miranda violation, reasoning that "[A] police officer's response to a direct inquiry by the defendant does not constitute 'interrogation.'" Id. at 740. Officer Moore is responding to the direct inquiry of the defendant, first asking what is going on and then repeatedly saying "I'm from out of town." See, e.g., United States v. Johnson, 680 F.3d 966, 977 (7th Cir.2012) (presenting or reciting the evidence against a suspect does not constitute interrogation, and citing cases from this and other circuits supporting that proposition); United States v. Knope, 655 F.3d 647, 652 (7th Cir.2011) (administrative questions—e.g., address of residence—do not constitute interrogation even where they lead to discovery of incriminating evidence)

In United States v. Hendrix, police arrested Hendrix on an outstanding warrant while they executed a search warrant for his home. 509 F.3d 362 (7th Cir. 2007). An officer transported Hendrix to the station on the warrant. Id. During the booking process, the defendant asked repeatedly what he was being charged with. Id. In response to the defendant's inquiry, the officer told him he was being arrested on the warrant and another charge. Id. At that time, Hendrix made a voluntary and spontaneous admission that "all they were going to find would be a pistol." Id. Notably, the officer did not tell Hendrix that he was going to be charged with any specific crime or state that additional charges had anything to do with firearms. Id. Similarly, the conversation begins with defendant asking

16

Officer Moore "what is going on". Ultimately, Officer Moore tells him that he "doesn't know". At that point, the defendant voluntarily and spontaneously admitted that a firearm was in the car.

Other circuits, in fact situations similar to the one here, have also held no Miranda violation occurred. For example, in United States v. Benton, 996 F.2d 642, 644 (3d Cir. 1993), the court found no functional equivalent of interrogation when officers, in response to the suspect asking why he was arrested, responded to defendant that they saw the suspect near where a gun was found. Similarly, in United States v. Barnes, 195 F.3d 1027, 1029 (8th Cir. 1999), a booking officer responded to the defendant's question and told him that he would be booked for possession of a firearm. When the defendant responded that "he didn't think so," the officer asked him what he meant, and the defendant subsequently made an incriminating response. The court held that "Barnes's [the defendant's] statements were spontaneous, and the officer's remark to Barnes that he was going to be charged with possession of a firearm was a statement of fact, not the functional equivalent of interrogation." Id.  The exchange between Officer Moore and the defendant is like these exchanges – defendant asked a question and Officer Moore responded.

The government concedes that the statements made once the defendant was handcuffed and inside Officer Moore's squad car with the door shut – concerning

17

his status as a felon and use of cocaine – were without the protection of <u>Miranda</u> and should be suppressed. (In contrast to statements made when the defendant was sitting on the side of the squad with the door open.) So too, therefore, should the interview at the Springfield Police Department as it was not attenuated from the questioning inside the squad car.

## Conclusion

The traffic stop of the defendant was valid – there was a violation of the Illinois vehicle code observed by two officers, which gave them probable cause to stop the defendant's vehicle. While officers should have read <u>Miranda</u> warnings to the defendant before questioning him while in custody, defendant made some statements which were not in response to any interrogation by officers – in particular, the defendant's statement that he had a gun in the back. Those statements should not be suppressed. The government requests the Court deny the defendant's motion as to those two issues and grant the motion as to the in custody interrogation inside the squad car and at the police station.

Respectfully Submitted,

GREGORY K. HARRIS
UNITED STATES ATTORNEY

<u>/s/ Sarah E. Seberger</u>
Sarah E. Seberger, IL Bar No. 6313942
Assistant United States Attorney
318 South 6th Street
Springfield, IL 62701

**CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record.

*/s/ Sarah E. Seberger*
Sarah E. Seberger
Assistant United States Attorney
318 South 6th Street
Springfield, IL 62701
Telephone: 217/492-4450
Email: sarah.seberger@usdoj.gov